UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MAXIMILLIANO CISNEROS,

Petitioner,

v.

WARDEN R. BAKER, et al.,

Respondents.

Case No. 3:13-cv-00033-MMD-VPC

ORDER

On January 22, 2013, this Court received Petitioner's *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, an application to proceed *in forma pauperis*, and a motion for appointment of counsel. (Dkt. no. 1, 1-1, 1-2.) After this Court denied Petitioner's application to proceed *in forma pauperis,* Petitioner paid the full filing fee. (Dkt. no. 3, 4). On March 7, 2013, this Court appointed a Federal Public Defender for the District of Nevada to represent Petitioner and noted that "timeliness of the petition may be at issue." (Dkt. no. 5 at 1.) On November 15, 2013, Petitioner, counseled, filed his First Amended Petition for Writ of Habeas Corpus by a Person in State Custody Pursuant to 28 U.S.C. § 2254. (Dkt. no. 19.) Pending before the Court is Respondents Warden R. Baker and the Attorney General of the State of Nevada's motion to dismiss the petition. (Dkt. no. 25.)

1    **I.      PROCEDURAL HISTORY**

2           On March 15, 2005, the State charged Petitioner with second-degree murder

3    with the use of a deadly weapon and attempted murder with the use of a deadly weapon

4    in the First Judicial District Court of the State of Nevada in and for Carson City. (Exh.

5    4.)[1] After a five-day trial, a jury found Petitioner not guilty of attempted murder but guilty

6    of second degree murder with the use of a deadly weapon. (*See* Exh. 10-12, 14-15, 20.)

7    On February 7, 2006, the state district court sentenced Petitioner to ten years to life,

8    with a consecutive ten years to life for the deadly weapon enhancement. (Exh. 21.) The

9    state district court entered a judgment of conviction on the same day. (*Id.*)

10          On February 24, 2006, Petitioner filed a direct appeal to the Nevada Supreme

11   Court. (Exh. 23.) On October 31, 2007, the Nevada Supreme Court affirmed the

12   judgment of conviction. (Exh. 31.) On November 28, 2007, the Nevada Supreme Court

13   issued its remittitur. (Exh. 33.)

14          On December 2, 2008, Petitioner filed a counseled state habeas petition in state

15   district court. (Exh. 34.) Petitioner's attorney was Daniel J. Albregts, Esq. (*See id.*) On

16   March 23, 2011, the state district court denied Petitioner's petition for writ of habeas

17   corpus on the merits. (*See* Exh. 43.) On April 18, 2011, Petitioner, through counsel, filed

18   a notice of appeal to the Nevada Supreme Court. (Exh. 46.)

19          On June 14, 2011, Albregts wrote Petitioner a letter and included his motion to

20   withdraw as counsel from the appeal. (Exh. 88.) Albregts wrote Petitioner the following:

21          I have filed the docketing statement for the criminal appeal and am
            obtaining a transcript from the hearing. However, if the court grants my
22          motion to withdraw you will be required to complete the opening brief and
            the rest of your appeal on your own. Once the motion is granted I will
23          forward you the file so that you have all of the pleadings and briefs which
            will provide you the necessary facts and case law to file the opening brief.
24

25          _____
                   [1]Petitioner filed Exhibits 1 through 62 in support of his amended petition for writ
26   of habeas corpus. These exhibits are located at CM/ECF docket entries 20 and 21.
     Respondents filed Exhibits 63 through 85 in support of their motion to dismiss. These
27   exhibits are located at CM/ECF docket entry 26. Petitioner filed Exhibits 86 through 112
     in support of his response to the motion to dismiss. These exhibits are located at
28   CM/ECF docket entries 32 and 33.

1      I will also provide a format for the brief so that you can use that format in
       completing your brief.

2              Finally, if the Nevada Supreme Court denies your appeal you
       should contact the Federal Public Defender's Office Habeas Unit . . .

3

4              I will notify you once I hear from the Supreme Court regarding my
       motion.

5    (*Id.*)

6         On June 24, 2011, the Nevada Supreme Court issued an order granting Albregts'

7    motion to withdraw as counsel of record on appeal. (Exh. 50.) The order stated that

8    Albregts "represents that he was retained to represent appellant in the post-conviction

9    proceedings in district court, was not retained to handle an appeal, and has been

10   unable to reach an agreement with appellant regarding a retainer for an appeal." (*Id.*)

11   The Nevada Supreme Court held that this was an "adequate cause for counsel to

12   withdraw in [the] matter" and ordered the clerk of the court to withdraw Daniel J.

13   Albregts as counsel of record for appellant. (*Id.*)

14        On March 9, 2012, Albregts wrote Petitioner another letter and informed

15   Petitioner that the Nevada Supreme Court had granted his motion to withdraw. (Exh.

16   89.) Albregts wrote Petitioner the following:

17             I am enclosing an Order the Supreme Court filed on June 24, 2011
       granting my Motion to Withdraw from your case and indicating that if you
18     did not retain new counsel within sixty (60) days of their Order they would
       decide the appeal based upon the record. Given that the sixty (60) days
19     has passed I suspect that the court is reviewing the record to determine
       whether or not there are any appellate issues.

20             It probably would be best at this stage to simply let the Supreme
       Court rule one way or another. If they grant your appeal then you can
21     decide how to proceed according to their decision. If they deny your
       appeal you can simply proceed to filing your federal writ. *You have one*
22     *year from the date of the Supreme Court's decision within which to file*
       *your writ.* You can then contact the Federal Defender's Office and ask that
23     they be appointed to represent you . . . I would contact them as soon as
       you receive a decision from the Supreme Court.

24

25   (*Id.*) (emphasis added.)

26        On July 25, 2012, the Nevada Supreme Court affirmed the dismissal of the state

27   habeas petition. (Exh. 53.) On August 20, 2012, the Nevada Supreme Court issued its

28   remittitur. (Exh. 54.)

1    On December 10, 11, or 16, 2012, Petitioner mailed or handed his federal

2  petition for writ of habeas corpus to a correctional officer for mailing.[2] (*See* dkt. no. 6 at

3  3; Exh. 84, 85, 107.)

4  **II.    DISCUSSION**

5    In their motion to dismiss, Respondents argue that the Antiterrorism and Effective

6  Death Penalty Act's ("AEDPA") statute of limitations expired on October 19, 2012 and,

7  thus, the original federal habeas petition, filed in December 2012, is untimely and

8  should be dismissed. (Dkt. no. 25 at 6.) Respondents assert that, if the Court finds that

9  the petition is timely, then Grounds Two, Four, and Six of the amended petition are

10  untimely because they do not relate back to the original petition. (*Id.* at 6, 9-10.)

11  Additionally, Respondents argue that Grounds One and Seven of the amended petition

12  are unexhausted. (*Id.* at 11-14; *see* dkt. no. 34 at 17.)

13    In response, Petitioner, counseled, acknowledges that his AEDPA time expired

14  on October 16, 2012, and that he filed his petition on December 10, 2012. (Dkt. no. 31

15  at 2.) Nonetheless, Petitioner argues that his original petition is timely because he is

16  entitled to equitable tolling. (*Id.* at 3.) Petitioner contends that he filed his original petition

17  late because of his attorney's gross negligence and incorrect legal advice about the

18  AEDPA filing deadline. (*Id.* at 12.) Petitioner argues that, after learning that his

19  attorney's advice had been incorrect, he pursued his rights diligently. (*Id.* at 13.)

20  Petitioner argues that the grounds in the amended petition relate back to the timely filed

21  original petition. (*Id.* at 15.) Petitioner asserts that he exhausted all of the grounds in his

22  amended petition. (*Id.* at 22.)

23    In reply, Respondents agree with Petitioner that his AEDPA statute of limitations

24  expired on October 16, 2012. (Dkt. no. 34 at 2.) Respondents argue that Petitioner is

25  not entitled to equitable tolling because his former attorney's incorrect time calculation

26  ///

27

28    [2]The Court discusses these dates *infra*.

4

1  amounted to nothing more than simple neglect. (*Id.* at 5.) Respondents contend that

2  Petitioner fails to demonstrate due diligence. (*Id.* at 8.)

3  The Court now addresses the issues of timeliness and equitable tolling.

4  **A.    Timeliness**

5  The Antiterrorism and Effective Death Penalty Act ("AEDPA") enacted a one-year

6  statute of limitations on the filing of federal habeas corpus petitions. With respect to the

7  statute of limitations, the habeas corpus statute provides:

8  (d)(1) A 1-year period of limitation shall apply to an application for a writ of
habeas corpus by a person in custody pursuant to the judgment of a State

9  court. The limitation period shall run from the latest of –

10  (A) the date on which the judgment became final by the conclusion
of direct review or the expiration of the time for seeking such review;

11

12  (B) the date on which the impediment to filing an application
created by State action in violation of the Constitution or laws of the United

13  States is removed, if the applicant was prevented from filing by such State
action;

14  (C) the date on which the constitutional right asserted was initially
recognized by the Supreme Court, if the right has been newly recognized

15  by the Supreme Court and made retroactively applicable to cases on
collateral review; or

16

17  (D) the date on which the factual predicate of the claim or claims
presented could have been discovered through the exercise of due
diligence.

18

19  (2) The time during which a properly filed application for State post-
conviction or other collateral review with respect to the pertinent judgment
or claim is pending shall not be counted toward any period of limitation

20  under this subsection.

21  28 U.S.C. § 2244(d).

22  For purposes of the AEDPA limitations period, "a judgment becomes 'final' in one

23  of two ways – either by the conclusion of direct review by the highest court, including

24  the United States Supreme Court, to review the judgment, or by the expiration of the

25  time to seek such review, again from the highest court from which such direct review

26  could be sought." *Wixom v. Washington*, 264 F.3d 894, 897 (9th Cir. 2001). "[W]hen a

27  petitioner fails to seek a writ of certiorari from the United States Supreme Court, the

28  AEDPA's one-year limitations period begins to run on the date the ninety-day period

1    defined by Supreme Court Rule 13 expires." *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th

2    Cir. 1999). United States Supreme Court Rule 13 provides that a petitioner has ninety

3    days from the entry of judgment or entry of an order denying rehearing, within which to

4    file a petition for certiorari. Sup. Ct. R. 13.1, 13.3. Rule 36(a) of the Nevada Rules of

5    Appellate Procedure states that "[t]he filing of the court's decision or order constitutes

6    entry of the judgment." Nev. R. App. P. 36(a). Where a petitioner pursues a direct

7    appeal to the state's highest court but declines to pursue a petition for writ of certiorari

8    with the United States Supreme Court, the petitioner's conviction becomes final upon

9    the expiration of the time to file a petition for writ of certiorari. *See Jimenez v.*

10   *Quarterman*, 555 U.S. 113, 119 (2009). Once the judgment of conviction becomes final,

11   the petitioner has 365 days to file a petition for relief under 28 U.S.C. § 2254, with tolling

12   of the time for filing during the pendency of "a properly filed application for State post-

13   conviction or other collateral review with respect to the pertinent judgment or claim . . . ."

14   28 U.S.C. § 2244(d)(2).

15      In this case, the state district court entered the judgment of conviction on

16   February 7, 2006. (Exh. 21.) The Nevada Supreme Court affirmed Petitioner's

17   conviction on October 31, 2007. (Exh. 31.) Petitioner's conviction became final on

18   January 29, 2008, after the 90-day period to seek certiorari from the United States

19   Supreme Court expired. The AEDPA statute of limitations began to run on January 29,

20   2008.

21      On December 2, 2008, when Petitioner had filed his state habeas petition in the

22   state district court, 309 of his 366 days of un-tolled AEDPA time had elapsed.[3] (Exh.

23   34.) The AEDPA limitations period was statutorily tolled until Petitioner's state habeas

24   petition and appeal from the denial of his petition were resolved by the Nevada

25   Supreme Court. *See* 28 U.S.C. § 2244(d)(2). On July 25, 2012, the Nevada Supreme

26   Court affirmed the state district court's denial of the petition. (Exh. 53.) On August 20,

27

        [3]The year 2008 was a leap year. The extra day is included in the one-year

28   period. *See generally United States v. Tawab*, 984 F.2d 1533, 1534 (9th Cir. 1993).

1   2012, the Nevada Supreme Court issued its remittitur. (Exh. 54.) The tolling period

2   under 28 U.S.C. § 2244(d)(2) ended with the issuance of the remittitur on August 20,

3   2012. At that time, the AEDPA statute of limitations began to run again and expired 57

4   days later on October 16, 2012.

5          The parties dispute which day Petitioner filed his original federal habeas petition.

6   *See Houston v. Lack*, 487 U.S. 266, 270 (1988) (pursuant to the "mailbox rule," federal

7   courts deem the filing date of a document as the date that it was given to prison officials

8   for mailing). In the original federal habeas petition, Petitioner did not include the date he

9   mailed the petition to this Court or the date he handed the petition to a correctional

10  officer for mailing to this Court. (*See* dkt. no. 6 at 1.) In the original petition, Petitioner

11  signed the declaration under penalty of perjury on December 10, 2012. (*Id.* at 3.)

12  Respondents contend that the earliest date that Petitioner could have filed the petition

13  was on December 16, 2012, the date that the prison records indicate he requested

14  postage. (Dkt. no. 25 at 6; Exh. 84, 85.) Petitioner asserts that he handed his petition to

15  a correctional officer for mailing on December 10 or 11, 2012. (Dkt. no. 31 at 9.) In

16  support of those dates, Petitioner submits an affidavit and copies of two "brass slips"

17  (inmate request forms) related to the petition dated December 11, 2012. (*See* Exh. 102-

18  103, 107.) Regardless of the date of filing, the parties concede that Petitioner filed his

19  original federal habeas petition after the expiration of the AEDPA statute of limitations

20  period of October 16, 2012. (Dkt. no. 25 at 6; dkt. no. 31 at 10). As such, the Court finds

21  that Petitioner's original federal habeas petition is untimely unless he can establish that

22  he is entitled to equitable tolling.

23      **B.      Equitable Tolling**

24          Petitioner argues that he is entitled to equitable tolling because he filed his

25  "petition in an untimely manner due entirely to the misconduct of his post-conviction

26  counsel, who provided him with incorrect legal advice regarding the actual deadline

27  under the AEDPA." (Dkt. no. 31 at 12.) Specifically, Albregts incorrectly informed

28  Petitioner that he had "one year from the date of the [Nevada] Supreme Court's decision

1   within which to file [his federal] writ," when in actuality Petitioner only had 57 days left to

2   file his federal habeas petition. (*Id.*) Petitioner contends that Albregts' "gross negligence

3   and incorrect legal advice" directly caused Petitioner to file his petition beyond the one-

4   year time period. (*Id.*) Petitioner asserts that he could not have been expected to

5   assume that his attorney had given him incorrect advice given Petitioner's low education

6   level and general lack of understanding of the process. (*Id.*) Petitioner argues that

7   Albregts' actions were more than a mere miscalculation of the deadline. (*Id.*) Petitioner

8   asserts that he pursued his rights diligently after learning that his attorney's advice had

9   been incorrect. (*Id.* at 13-15.)

10   Respondents assert that Albregts' miscalculation of the statute of limitations is

11   nothing more than ordinary attorney negligence and is insufficient to justify equitable

12   tolling. (Dkt. no. 34 at 5.) Respondents argue that Petitioner fails to demonstrate that his

13   limited education or lack of understanding of the appellate system justifies equitable

14   tolling. (*Id.* at 6.)

15   In *Holland v. Florida*, 560 U.S. 631 (2010), the United States Supreme Court held

16   that 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases. *Id.* at 645. A

17   petitioner is entitled to equitable tolling only if he shows that: (1) "he has been pursuing

18   his rights diligently," and (2) "some extraordinary circumstance stood in his way and

19   prevented timely filing." *Id.* at 649 (*citing Pace v. DiGuglielmo*, 544 U.S. 408, 418

20   (2005)). "The petitioner must show that 'the extraordinary circumstances were the cause

21   of his untimeliness and that the extraordinary circumstances made it impossible to file a

22   petition on time.'" *Porter v. Ollison*, 620 F.3d 952, 959 (9th Cir. 2010). "[T]he threshold

23   necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions

24   swallow the rule." *Id.* (*citing Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003).

25   The United States Supreme Court has held that "a garden variety claim of

26   excusable neglect . . . such as a simple 'miscalculation' that leads a lawyer to miss a

27   filing deadline . . . does not warrant equitable tolling." *Holland*, 560 U.S. at 651-52.

28   ///

However, "unprofessional attorney conduct may, in certain circumstances, prove 'egregious' and can be 'extraordinary.'" *Id.* at 651.

In *Frye v. Hickman*, 273 F.3d 1144 (9th Cir. 2001), the petitioner had filed his § 2254 petition after the expiration of the AEDPA's one-year statute of limitations. *Id.* at 1145. There, the key issue was "whether the statute of limitations was equitably tolled when [petitioner's] attorney negligently failed to file a petition within the year, even as adjusted to account for statutory tolling." *Id.* The Ninth Circuit concluded that "the miscalculation of the limitations period by [petitioner's] counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling." *Id.* at 1146.

In *Miranda v. Castro*, 292 F.3d 1063 (9th Cir. 2002), the petitioner had filed his § 2254 petition after the expiration of the one-year statute of limitations. *Id.* at 1065. In that case, the petitioner's appointed appellate counsel had sent the petitioner a letter indicating that his petition for review had been denied by the California Supreme Court. *Id.* at 1065-66. The letter informed the petitioner that the attorney's appointed representation had "concluded" and that, if petitioner wished to pursue a federal habeas petition on his own, he had to do so "no later than one year after the conclusion of the state court's direct review of [the petitioner's] claims." *Id.* at 1066. The letter stated that it was "not clear when [the] one-year clock start[ed] running" but "within one year after the issuance of the Court of Appeals opinion, which in this case means by April 23, 2001." *Id.* The Ninth Circuit stated that the "letter obviously contained either a miscalculation— or, more probably, a typo" and that "'one year after the issuance of' the opinion would have actually fall[en] on April 23, 2000." *Id.* The Ninth Circuit determined that Miranda had until October 13, 2000, to file his federal habeas petition. *Id.* at 1065. The Ninth Circuit noted that the petitioner had the right to appointed counsel during the course of his direct review but noted that the attorney's letter made clear that her representation with the direct review had ended. *Id.* at 1067. The Ninth Circuit further observed that the petitioner had no right to the "generously offered" advice in the letter after the close of

1    the attorney's representation which "apparently included a miscalculated due date . . . or

2    typo." *Id.* at 1067-68. The Ninth Circuit concluded that the attorney's miscalculation of

3    the limitations period and her negligence in general did not constitute extraordinary

4    circumstances sufficient to warrant equitable tolling. *Id.* at 1068.

5          In *Spitsyn v. Moore*, 345 F.3d 796 (9th Cir. 2003), the Ninth Circuit held that

6    extraordinary circumstances existed "where an attorney was retained to prepare and file

7    a petition, failed to do so, and disregarded requests to return the files pertaining to

8    petitioner's case until well after the date the petition was due." *Id.* at 798-99. In that

9    case, the attorney had been "hired nearly a full year in advance of the deadline" and

10   "completely failed to prepare and file a petition." *Id.* at 801. The petitioner and his

11   mother had contacted the attorney "numerous times, by telephone and in writing,

12   seeking action, but these efforts proved fruitless." *Id.* Additionally, despite a request that

13   the attorney return the petitioner's file, the attorney "retained it for the duration of the

14   limitations period and more than two months beyond." *Id.* The Ninth Circuit held that the

15   "conduct was so deficient as to distinguish it from the merely negligent performance of

16   counsel in *Frye* and *Miranda*." *Id.* The Ninth Circuit remanded the case back to the

17   district court for further consideration of whether the petitioner had exercised reasonable

18   diligence in pursing the matter. *Id.* at 802.

19         In *Holland*, the United States Supreme Court held that the facts of the petitioner's

20   case "may well be extraordinary" and remanded the case back to the lower court for

21   further proceedings. 560 U.S. at 652-54. In that case, the United States Supreme Court

22   held that the attorney's conduct involved more serious instances of attorney misconduct

23   than the garden variety claim of attorney negligence. *Id.* at 652. The attorney in that

24   case had been appointed to represent the petitioner in all state and federal post-

25   conviction proceedings. *Id.* at 635-36. The United States Supreme Court noted that the

26   attorney's failure to file the petition on time and the attorney's lack of awareness of the

27   date on which the limitations period expired, alone, might have suggested simple

28   negligence. *Id.* at 652. However, the United States Supreme Court noted that: (1) the

1   attorney also failed to file the federal petition on time despite the petitioner's many

2   letters that repeatedly emphasized the importance of his doing so; (2) the attorney did

3   not do the research necessary to find out the proper filing date despite the petitioner's

4   letter which identified the applicable legal rules; (3) the attorney's failure to inform the

5   petitioner in a timely manner about the crucial fact that the Florida Supreme Court had

6   decided his case despite the petitioner's many pleas for that information; and (4) the

7   attorney's failure to communicate with the petitioner over a period of years despite

8   various pleas from the petitioner that the attorney respond to his letters. *Id.*

9        In the present case, the Court finds that Petitioner fails to demonstrate that

10  extraordinary circumstances prevented him from timely filing his federal petition. The

11  Court finds that Petitioner's case is akin to the facts in *Miranda v. Castro*, 292 F.3d 1063

12  (9th Cir. 2002). Similar to the attorney in *Miranda*, Albregts sent Petitioner a letter

13  informing Petitioner that he was no longer representing Petitioner. Albregts then offered

14  some final thoughts on the deadline for filing a federal habeas claim. Albregts' letter, like

15  the attorney's letter in *Miranda*, included a miscalculated due date for the federal

16  petition. As the case law demonstrates, the general negligence of counsel and the

17  miscalculation of the limitations period by counsel do not constitute extraordinary

18  circumstances sufficient to warrant equitable tolling.

19       Additionally, Petitioner's low education level and general lack of understanding of

20  the habeas process do not constitute extraordinary circumstances in this case. In

21  *Rasberry v. Garcia*, 448 F.3d 1150 (9th Cir. 2006), the Ninth Circuit held that "a pro se

22  petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance

23  warranting equitable tolling." *Id.* at 1154. In *Brown v. Roe*, 279 F.3d 742 (9th Cir. 2002),

24  the Ninth Circuit held that the district court should have considered an equitable tolling

25  claim where the petitioner "had a third-grade education and was functionally illiterate."

26  *Id.* at 745. In this case, Petitioner has not alleged that he is "functionally illiterate."

27  Instead, Petitioner asserts that he dropped out of school in 10th grade, while receiving

28  D's for grades, and that he has "a really hard time understanding what's happening in

1    [his] case and the legal issues." (Exh. 107, ¶ 16.) The Court finds that Petitioner has not

2    established that some extraordinary circumstance stood in his way and, thus, Petitioner

3    is not entitled to equitable tolling. As such, the Court dismisses the original federal

4    habeas petition and the first amended petition as untimely.

5    **III.    CERTIFICATE OF APPEALABILITY**

6           In order to proceed with an appeal, Petitioner must receive a certificate of

7    appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; Ninth Cir. R. 22-1; *Allen v.*

8    *Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006). Generally, a petitioner must make "a

9    substantial showing of the denial of a constitutional right" to warrant a certificate of

10   appealability. *Allen*, 435 F.3d at 951; 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529

11   U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would

12   find the district court's assessment of the constitutional claims debatable or wrong."

13   *Allen*, 435 F.3d at 951 (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold

14   inquiry, the petitioner has the burden of demonstrating that the issues are debatable

15   among jurists of reason; that a court could resolve the issues differently; or that the

16   questions are adequate to deserve encouragement to proceed further. *Id.*

17          This Court has considered the issues raised by Petitioner, with respect to

18   whether they satisfy the standard for issuance of a certificate of appealability, and

19   determines that none meet that standard. Therefore, the Court denies Petitioner a

20   certificate of appealability.

21   **IV.    CONCLUSION**

22          For the foregoing reasons, it is ordered that Respondents' motion to dismiss (dkt.

23   no. 25) is granted.

24          It is further ordered that the federal petition for writ of habeas corpus (dkt. no. 6)

25   and the first amended petition for writ of habeas corpus (dkt. no. 19) are dismissed with

26   prejudice as untimely.

27   ///

28   ///

1      It is further ordered that Petitioner is denied a certificate of appealability.

2      The Clerk of the Court shall enter judgment accordingly.

3      DATED THIS 2nd day of September 2014.

4

5      _____
       MIRANDA M. DU

6      UNITED STATES DISTRICT JUDGE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28